409 A.2d 1173

COMMONWEALTH of Pennsylvania

v.

Timothy David GABRIELLE, Appellant.

Superior Court of Pennsylvania.

Submitted March 23, 1979.

Filed Sept. 7, 1979.

Robert Lee Moore, Assistant Public Defender, Reading, for appellant.

J. Michael Morrissey, District Attorney, Reading, for Commonwealth, appellee.

Before PRICE, SPAETH, and LIPEZ, JJ.

SPAETH, Judge:

This is an appeal from judgment of sentence for illegal possession of a controlled substance. The issue is whether the lower court erred in denying appellant's motion to suppress a cellophane bag containing marijuana.

On May 12, 1977, police received a tip that appellant, a prisoner at Berks County Prison in the work release program, would have marijuana in his locker at his place of employment on the following day. The locker was described by number. The source of the information was the warden at Berks County Prison.

The following day, a plainclothes police officer, without obtaining a search warrant, went to the plant where appellant worked, identified himself to a receptionist, and followed appellant to the locker. After appellant opened the locker, which was the bottom locker in a tier, and thus near the floor, the officer stooped down, and while looking over appellant's shoulder into the partially opened locker, observed a cellophane bag that he believed to contain marijuana. The officer arrested appellant, and seized the bag from the locker.

Appellant contends that this evidence should have been suppressed, because the police had ample time in which to secure a warrant, did not, and offered no excuse for failing to do so.

■ The requirements of the Fourth Amendment apply not simply to one's home, but to any area where one has a "reasonable expectation of privacy." *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977); *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). Thus, the Fourth Amendment has been applied in a variety of settings. *United States v. Chadwick, supra* (footlocker); *GM Leasing Corp. v. United States*, 429 U.S. 338, 97 S.Ct. 619, 50 L.Ed.2d 530 (1977) (office); *United States v. Jeffers*, 342 U.S. 48, 72 S.Ct. 93, 96 L.Ed. 59 (1951) (hotel room); *Gillard v. Schmidt*, 579 F.2d 828 (3d Cir. 1978) (desk at place of employment).

In cases involving a locker at the defendant's place of employment, courts have evaluated the surrounding circumstances to determine whether the defendant's expectation of privacy was reasonable. In *United States v. Speights*, 557 F.2d 362 (3d Cir. 1977), police searched the locker of a fellow officer pursuant to a tip in connection with an investigation of a burglary ring. The court held that the locker was protected by the Fourth Amendment, because the officer stored personal effects in it without objection from the police department; there were no departmental regulations that authorized searches without consent; there was no significant pattern of prior searches that would have alerted the defendant to the risk of a search; and he had secured the locker with a personal lock to which the department did not have a key. *Id.* at 363–65. In *United States v. Bunkers*, 521 F.2d 1217 (9th Cir.), *cert. denied*, 423 U.S. 989, 96 S.Ct. 400, 46 L.Ed.2d 307 (1975), the court held that a postal service employee did not have a reasonable expectation of privacy, because the locker was supplied specifically for employees' "convenience at work," which the court interpreted as prohibiting the storage of personal articles, and because postal service regulations authorized warrantless searches of employee's lockers. In *United States v. Donato*, 269 F.Supp. 921 (E.D.Pa.) *affirmed*, 379 F.2d 288 (3d Cir. 1967), the warrantless search of a United States Mint employee's locker was held proper where Mint officials held a

master key allowing access to all lockers; lockers were routinely inspected for sanitation purposes; and regulations specifically stated that lockers were not to be considered private, and prohibited personal locks unless a key to them was supplied to the Mint. *Id.* at 923. Finally, in *Shaffer v. Field,* 339 F.Supp. 997 (C.D.Cal.1972), *affirmed,* 484 F.2d 1196 (9th Cir. 1973), the court held that a deputy sheriff did not have a reasonable expectation of privacy in his locker at the station house, where the locker was secured by a lock provided by the police department; the district commander had the combination to all locks and a master key; lockers were subject to change at the commander's order; and on three past occasions deputies' lockers were searched without their consent. *Id.* at 1003.

The locker here, although not assigned to appellant by his employer, was used by appellant on a regular basis; the informant was able to identify it by number as being appellant's locker. It is undisputed that appellant regularly used a lock on his locker, and that a padlock owned by him secured the locker the day before his arrest. The fact that appellant had in the past shared his locker does not mean that he had therefore surrendered his expectation of privacy generally, that is, with respect to persons whom he did not authorize to enter it. Likewise, whether appellant had a lock on the locker on the day of his arrest is not dispositive of his claim to an expectation of privacy. Some thirty percent of the lockers did not have locks, and yet apparently were still respected by other employees as being under the control of the employees who used them regularly.

■ As against these factors, the Commonwealth has not shown that employees had on prior occasions been subject to the search of their lockers, or that there were company regulations permitting entry without an employee's consent. When an employee had his own lock on a locker, only he could gain access to it; the employer had no master key. In any event, the Commonwealth cannot rely on the fact that the locker was company property, for the police did not obtain consent from company officials to enter the locker.

■ Furthermore, in each of the cases in which a court found that the employee's expectation of privacy was unreasonable, the employee was an employee of the government, and was entrusted with matters of public concern, so that the government as part of its general supervisory function had an interest in regulating the employer's use of the locker. This is not to suggest that a governmental employee may not have a reasonable expectation that the government will not search his locker without his consent. However, in deciding the reasonableness of his expectations, the nature of his employment may be relevant. In any event, appellant was a private employee. His locker was not government property, and so far as appears, his employer had no interest in regulating his use of the locker; at least the employer had not manifested such an interest, as for example by promulgating regulations permitting search of the locker without the employee's consent.

■ It is true that appellant was a prisoner on a work release assignment at the time of his arrest. The search did not take place on prison property, however, where it might be argued he would have a much lesser expectation of privacy, and the Commonwealth did not offer evidence of any prison regulations authorizing the search of a work release prisoner at the assigned work site, which would have given appellant notice of the possibility of such a search. Moreover, the search cannot be justified by the need to maintain security and discipline within the prison, for prison officials concerned about contraband entering the prison can search prisoners upon their return from work release assignments.

■ Weighing all of the factors here, we conclude that appellant's expectation of privacy was reasonable. It follows that in deciding the validity of the search of appellant's locker we must inquire whether the requirements of the Fourth Amendment were met.

■ In general, where practical the police are required to obtain a search warrant. Warrantless searches are *per se*

unreasonable, subject only to a few, limited exceptions. *Mincey v. Arizona,* 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978); *Commonwealth v. Cockfield,* 431 Pa. 639, 246 A.2d 381 (1968), *appeal after remand,* 465 Pa. 415, 350 A.2d 833 (1976); *Commonwealth v. Linde,* 448 Pa. 230, 293 A.2d 62 (1972). Here, the police had ample opportunity to obtain a warrant, for they received the tip that appellant would have marijuana in his locker the day before. The Commonwealth has not offered any excuse why, despite this advance notice, it did not seek a warrant; nor has it shown that the search fit within one of the exceptions permitting a search without a warrant.

 To justify the search as within the plain view exception, it is necessary that the officer was lawfully in a position to make the view, and that his discovery of the evidence was inadvertent. *Commonwealth v. Adams,* 234 Pa.Super. 475, 341 A.2d 206 (1975). Here, the officer went to the plant for the express purpose of looking for the marijuana, knew in advance where it would be, and stooped down to look over appellant's shoulder in order to view the contraband.

 A search incident to arrest is limited to the person of the suspect and the area of his immediate control. It is permitted for the protection of the arresting officer. *Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); *United States v. Chadwick, supra.* Here, the officer did search appellant's person, arrested him, and "placed him in custody."[1] In afterwards searching the locker, the officer was not searching an area within appellant's control. Appellant was standing two feet away, and would have had to bend down in order to reach anything inside the locker, and, further, was "in custody." The officer was not acting to protect himself. Appellant had not resisted arrest, nor in any way indicated an intention to assault the arresting officer. Nor did the officer have any reason to fear that appellant might get a weapon from the locker. The officer

[1]. Although the record is not clear, the phrase "placed him in custody" implies that appellant was handcuffed.

had already observed the inside of the locker, and knew that it was empty except for the bag of marijuana and a small brown paper bag later found to contain appellant's lunch.

Finally, there was no evidence of a risk that the contraband would be destroyed. The mere possibility that some third person might destroy evidence is not sufficient to permit the search. *United States v. Hayes*, 518 F.2d 675 (6th Cir. 1975).

Judgment reversed; case remanded for a new trial.

PRICE, J. dissents.