564 A.2d 1269

COMMONWEALTH of Pennsylvania, Appellant,

v.

Brian HAGGERTY.

COMMONWEALTH of Pennsylvania, Appellant,

v.

Ernest O. MATOS.

COMMONWEALTH of Pennsylvania, Appellant,

v.

Alicea ROSA.

COMMONWEALTH of Pennsylvania, Appellant,

v.

Andrea SOTO.

Superior Court of Pennsylvania.

Submitted May 2, 1989.

Filed Oct. 5, 1989.

Catherine Marshall, Asst. Dist. Atty., Philadelphia, for Com., appellant.

John Packel, Asst. Public Defender, Philadelphia, for appellees.

Before CAVANAUGH, TAMILIA and KELLY, JJ.

TAMILIA, Judge:

These are consolidated appeals by the Commonwealth from the Orders of court entered June 8, 1988 suppressing approximately two and one-half pounds of cocaine and drug paraphernalia seized by police on a finding that the "four corners" of the challenged search warrant did not establish probable cause.[1]

A bail commissioner issued the search warrant in this case, based on an affidavit which failed to provide the date on which the confidential informant witnessed the persons,

---

1. The Commonwealth appeals on the basis of *Commonwealth v. Dugger,* 506 Pa. 537, 486 A.2d 382 (1985), as suppression of the evidence of drugs and drug paraphernalia effectively terminated the prosecution.

whose home was to be searched, in possession of drugs.[2] Even so, the Commonwealth asserts the warrant was based on probable cause under the good faith exception to the exclusionary rule. The United States Supreme Court in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), recognized a good faith amendment to the exclusionary rule of the fourth amendment when it held the rule should not be applied so as to bar the use in the prosecution's case-in-chief of inherently trustworthy, tangible evidence obtained by officers acting in reasonable reliance on a search warrant, issued by a detached and neutral magistrate, which ultimately is found to be defective. *Id.* at 907, 104 S.Ct. at 3412, 82 L.Ed.2d at 688.

Although we do not as yet have clear directions from the Pennsylvania Supreme Court on the good faith exception announced in *Leon*, *supra*, and *Massachusetts v. Sheppard*, 468 U.S. 981, 104 S.Ct. 3424, 82 L.Ed.2d 737 (1984), we believe if the doctrine were approved by our Supreme Court, this case would clearly fall within it, even under the restricted view taken by the dissent of the probable cause statement contained in the search warrant and affidavit.

We agree with the following discussion by the Supreme Court in *Leon:*

2. The affidavit stated:
   On Thursday 8–20–87 in the early evening hours Sgt. M. PEREZ # 428 Narcotics unit received information from a proven reliable informant, who within the past (5) days provided information to Sgt. M. PEREZ resulting in the arrest of (1) person and the confiscation of an amount of cocaine and heroin. This informant went on to state to PEREZ that he/she had occasion to be inside 2549 N. Mascher St., Phila. Pa. in the company of a H/M known to him/her as Jose RIVERA who also uses the name BRIAN, and while there the informant states he/she did observe RIVERA/BRIAN in possession of several large blocks of a white chunky substance which RIVERA did refer to as cocaine, the informant states that RIVERA also had in his possession several empty clear plastic baggies and (2) scales. The informant went on to state that he/she did hear a conversation between RIVERA and another unidentified H/M, and RIVERA did state to this H/M that he was going to start bagging up the cocaine so it could be picked up by his workers who would transport the cocaine to different locations for the purpose of selling it.

The substantial social costs exacted by the exclusionary rule for the vindication of Fourth Amendment rights have long been a source of concern. 'Our cases have consistently recognized that unbending application of the exclusionary sanction to enforce ideals of governmental rectitude would impede unacceptably the truth-finding functions of judge and jury.' An objectionable collateral consequence of this interference with the criminal justice system's truth-finding function is that some guilty defendants may go free or receive reduced sentences as a result of favorable plea bargains. Particularly when law enforcement officers have acted in objective good faith or their transgressions have been minor, the magnitude of the benefit conferred on such guilty defendants offends basic concepts of the criminal justice system. Indiscriminate application of the exclusionary rule, therefore, may well 'generate disrespect for the law and administration of justice.' Accordingly, 'as with any remedial device, the application of the rule has been restricted to those areas where its remedial objectives are thought most efficaciously served.'

*Id.* at 907–8, 104 S.Ct. at 3412–13, 82 L.Ed.2d at 688–9.

█ Although a search warrant is defective if the issuing authority is not supplied a time frame upon which to ascertain when the affiant obtained his information from his informant and when the informant himself obtained the information he allegedly had, *Commonwealth v. Kalinowski,* 303 Pa.Super. 354, 449 A.2d 725 (1982), citing *Commonwealth v. Conner,* 452 Pa. 333, 305 A.2d 341 (1973), we find the information as to the date of the drug activity was available for the bail commissioner's use in issuing the warrant. *See* discussion, *infra.* An inadvertent error in processing a search warrant should not result in the dismissal of charges against alleged drug dealers. We find, however, aside from the good faith exception which remains to be construed by our Supreme Court, under the totality of the circumstances test, announced by the United States Supreme Court in *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct.

2317, 76 L.Ed.2d 527 (1983), and adopted by our Supreme Court in *Commonwealth v. Gray*, 509 Pa. 476, 503 A.2d 921 (1985), the probable cause section does meet the test required for specificity relating to time, place and alleged criminal activity required to be contained within the four corners of the affidavit.

The trial court acknowledged the officers would have testified credibly that in supplying the information to the officer typing the warrant, all of the essential information was given to the effect that the criminal activity was observed by the informant on August 20, 1987, and while this date was typed in the affidavit as the date the information was received, it was inadvertently left out as the date when the activity was observed. We find that upon reading the affidavit from the point of view not of judges applying a critical legalistic eye, but of officers and magistrates working under time limits and urgency to proceed expeditiously, the only inference which can be drawn from the affidavit as written is that drug activity was currently in progress. Reading the affidavit within its four corners, it is fair to assume it informs that on Thursday, August 20, 1987, in the early evening hours, Sergeant Perez received information from a proven reliable informant that he/she had occasion to be inside 2549 N. Mascher Street, Philadelphia, Pennsylvania, in the company of Rivera a/k/a Brian where he observed Brian in possession of several large blocks of white chunky substance Brian referred to as cocaine, and that he had in his possession clear plastic baggies and two scales and Brian had a conversation with another person that he was going to start bagging cocaine so it could be picked up by his workers for distribution.

A fair reading of the affidavit leads to the conclusion the informant reported what he had just seen. Any other interpretation would be strained and would require that we ignore the more common sense approach announced by *Gray* and return to the hypertechnical standard required under *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). The necessity to establish the time

frame concerning which the search warrant is sought is to avoid staleness as a warrant can only issue upon probable cause that exists at the time of issuance. *Commonwealth v. Stamps*, 493 Pa. 530, 427 A.2d 141 (1981). Mere lapse of time between discovery of criminal activity and issuance of a search warrant will not necessarily dissipate probable cause and a showing that criminal activity is likely to have continued up to the time of issuance of a warrant will render otherwise stale information viable. A period of fourteen days between the observed criminal activity and the issuance of the warrant was not too remote to support a finding of probable cause. *Id.* Here, the large quantity of cocaine, the need to weigh and bag it, and the use of workers to provide distribution, pointed to a large operation conducted over a period of time. The informant had delivered valid information leading to the arrest of a person and confiscation of cocaine within the previous five days. Pursuant to this information, the officer seeking the warrant, the officer typing the warrant, the bail commissioner who issued the warrant and the assistant district attorney who approved the affidavit for the officer believed the affidavit provided sufficient probable cause to support the warrant. None caught the inadvertent lapse in supplying the date the informant viewed the activity because the affidavit could reasonably be read to mean he reported the activity immediately after he viewed it on August 20, 1987.

For these reasons, we reverse the trial court and remand the case for trial permitting the evidence seized to be admitted.

■ While we have not attempted to support the admission of this evidence on the basis of the good faith exception adopted by the United States Supreme Court, we believe that rule is also applicable here. Where the police are not chargeable with any misconduct and in all respects their procedures have been in compliance with the law in pursuit of a search warrant, the mere inadvertence of those involved in preparing an affidavit, in failing to provide a fact which was known to the officials involved, should not result

in the nullification of that effort. To do so would not be to assure protection of the innocent, as intended by the constitution, but it would provide undeserved escape mechanisms for the guilty.

Orders reversed at Nos. 02123, 02124, 02125 and 02126 Philadelphia, 1988; cases remanded for trial permitting the seized evidence to be admitted.

Jurisdiction relinquished.

KELLY, J., joins TAMILIA, J., and files a concurring statement.

CAVANAUGH, J., dissents.

KELLY, Judge, concurring:

I join the majority opinion. I agree that the affidavit adequately indicates the immediacy of the affiant's observations and that the clerical omission of the date of the observations is not fatal to the validity of the warrant in this case.

I have no doubt that even if the warrant was deemed defective, the officers' subsequent search would plainly fall within the recognized "good faith" exception to the *federal* exclusionary rule. *See* Annotation, *Admissibility in Criminal Case of Evidence Obtained by Law Enforcement Officer Allegedly Relying Reasonably and in Good Faith on a Defective Warrant*, 82 L.E.2d.2d 1054 (1986 & 1988 supp.) (collecting cases). I have noted previously my concerns regarding the existence and scope of a *state* constitutionally based exclusionary rule given our Supreme Court's historical rejection of the *federal* exclusionary rule. *See Commonwealth v. Shaeffer*, 370 Pa.Super. 179, 262–271, 536 A.2d 354, 396–400 (Kelly, J., concurring and dissenting); *allocatur granted* 520 Pa. 596, 552 A.2d 251 (1988); *see also Commonwealth v. Melson*, 383 Pa.Super. 139, 171–75, 556 A.2d 836, 852–53 (1989) (Kelly, J., dissenting). The recent opinion in *Commonwealth v. Mellini*, 521 Pa. 405, 555 A.2d 1254 (1989), indicates the existence of a *state* constitutionally based exclusionary rule without delineating

its scope. Consequently, rather than viewing this case as recognizing an *exception* to the *state* constitutionally based exclusionary rule applied in *Mellini,* I would view this case as *declining to expand* the scope of our nascent state exclusionary rule beyond the bounds which our Supreme Court's decision commands. Whatever the scope of the new state exclusionary rule may be, I cannot believe it is intended to cover the error which occurred here.

CAVANAUGH, Judge, dissenting:

This case involves an appeal by the Commonwealth from an Order of the court below by Bernstein, J. suppressing evidence consisting of approximately two and one-half pounds of cocaine and drug paraphernalia seized by the police.[1]

A warrant was issued by a bail commissioner based on an affidavit which did not set forth probable cause for issuance of the warrant as it did not state the time in which the informant observed drugs in possession of the persons whose home was to be searched.[2] As the warrant did not

---

1. The Commonwealth appeals on the basis of *Commonwealth v. Dugger,* 506 Pa. 537, 486 A.2d 382 (1985) as suppression of the evidence of drugs and drug paraphernalia effectively terminated the prosecution.

2. The probable cause section of the search warrant and affidavit stated:

> On Thursday 8–20–87 in the early evening hours Sgt. M. PEREZ # 428 Narcotics unit received information from a proven reliable informant, who within the past (5) days provided information to Sgt. M. PEREZ resulting in the arrest of (1) person and the confiscation of an amount of cocaine and heroin. This informant went on to state to PEREZ that he/she had occasion to be inside 2549 N. Mascher St., Phila. Pa. in the company of a H/M known to him/her as Jose RIVERA who also uses the name BRIAN, and while there the informant states he/she did observe RIVERA/BRIAN in possession of several large blocks of a white chunky substance which RIVERA did refer to as cocaine, the informant states that RIVERA also had in his possession several empty clear plastic baggies and (2) scales. The informant went on to state that he/she did hear a conversation between RIVERA and another unidentified H/M, and RIVERA did state to this H/M that he was going to start bagging up the cocaine so it could be picked up by his workers who would transport the cocaine go different locations for the purpose of selling it.

set forth probable cause, and there was nothing before the issuing authority to indicate probable cause when the warrant was issued, I dissent and would affirm the order of the court below.

The majority opinion does not support the admission on the basis of the good faith exception adopted by the Supreme Court, but instead has determined that the affidavit when read in a non technical way "leads to the conclusion [that] the informant reported what he had just seen." [3] Looking at the four corners of the affidavit there is clearly no indication when the informant observed the contraband. All that the affidavit states is that the informant notified a police officer, Sergeant Perez, that he had occasion to be inside a house located at a specific address and he observed a Mr. Rivera in possession of a white substance which Rivera referred to as cocaine and Rivera had in his possession plastic bags and two scales. Also, Rivera stated he was going to start bagging the cocaine for sale. Clearly the informant observed drug related activities, but the essential element missing is *when* did this observation take place.

The majority states at page 5, slip opinion.

We find that upon reading the affidavit from the point of view not of judges applying a critical legalistic eye, but of officers and magistrates working under the limits and urgency to proceed expeditiously, *the only inference which can be drawn from the affidavit as written is that drug activity was currently in progress.* (Emphasis added.)

In my opinion, there is no such inference at all and the majority opinion finds the inference so that the search

---

3. The Commonwealth does not contend that the affidavit set forth probable cause. At the hearing in the court below, the following took place:

THE COURT: If I'm understanding the basis of your argument, the Commonwealth is conceding that the warrant is deficient on its face.

MR. BASEWITZ: [Assistant District Attorney] I didn't want to, but I guess I have to, yes, Your Honor.

warrant will prevail notwithstanding its lack of specificity as to when the contraband was observed.[4]

The majority opinion posits at page —— a situation that did not exist in this case when it states:

Where the police are not chargeable with any midconduct and in all respects their procedures have been in compliance with the law in pursuit of a search warrant, the mere inadvertence of those involved in preparing an affidavit, *in failing to provide a fact which was known to the officials involved,* should not result in the nullification of that effort.   (Emphasis added)

The flaw is that while the police were aware when the informant observed the drugs, *the issuing authority was not provided with a factual basis as to when the observations occurred.*   The knowledge must be conveyed to the impartial arbiter issuing the search warrant and that is what is lacking in this case.   The police and the magistrate do not work as a unit.   The magistrate is an independent arbiter who must determine if probable cause exists for the issuance of a search *based on information supplied to him prior to the issuance of the warrant.*

A search warrant is defective if the magistrate is not furnished a time frame upon which to ascertain when the affiant obtained his information from the informant and when the informant himself obtained the information he allegedly had.   *Commonwealth v. Conner,* 452 Pa. 333, 305 A.2d 341 (1973).   Stale information cannot supply the probable cause necessary to support issuance of a search warrant.   *Commonwealth v. Samuels,* 326 Pa.Super. 561, 474 A.2d 632 (1984).   For a search warrant to be constitutionally valid, the issuing authority must decide that probable

**4.** The majority states at page 1271:

*An inadvertent error in processing a search warrant should not result in the dismissal of charges against alleged drug dealers.*   (Emphasis added.)

If the error results in a deprivation of constitutional rights, the fact that an alleged drug dealer is involved is of no legal significance.   The Constitution applies to all those charged with crime, notwithstanding the seriousness of the alleged offense.

cause exists at the time the warrant is issued. *Common-wealth v. Carelli*, 308 Pa.Super. 522, 454 A.2d 1020 (1982). The determination that probable cause exists must be made before the search and not subsequent to it. *Common-wealth v. Chandler*, 505 Pa. 113, 477 A.2d 851 (1984). Finally, the determination of probable cause for issuance of the warrant must be based on facts described within the four corners of the supporting affidavit. *Commonwealth v. Way*, 342 Pa.Super. 341, 492 A.2d 1151 (1985).

In the case before us, after the search warrant was issued and the evidence seized, the defendants below filed a motion to suppress on the grounds that the search warrant was invalid. At argument, the Commonwealth conceded that the search warrant was defective on its face since it did not allege the date or time when the informant observed drugs and drug paraphernalia at 2549 N. Mascher Street in Philadelphia. The Commonwealth argued that the police officer in preparing the affidavit inadvertently omitted that the informant observed the drugs on the premises to be searched on August 20, 1987, the date of the affidavit.[5] The court below determined that there was no probable cause for issuance of the warrant and suppressed the evidence as a result of an illegal search and seizure.

There is a fundamental right under both the Fourth Amendment to the Constitution of the United States and the Constitution of Pennsylvania to be free from unreasonable search and seizure. *See Commonwealth v. Chandler*, 505 Pa. 113, 477 A.2d 851 (1984). Before a search warrant may be issued sufficient information must be presented to a magistrate to enable him to determine probable cause and his action cannot be a mere ratification of the conclusions of

5. Officer Snead, who prepared the search warrant, testified that:
   I then went from my headquarters to the Roundhouse, to the District Attorney's trailer; and I had the warrant reviewed and approved. From that point on, I went over to the arraignment court and I had the warrant signed by a bail commissioner.
   Q. When you say you want to the D.A.'s Charging Unit and had it approved, in what capacity was the person from the D.A.'s office that reviewed it, if you know?
   A. Assistant District Attorney.

another. *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).[6] The Constitution of the Commonwealth of Pennsylvania gives its citizens protection against unreasonable search in Article I, Section 8 which states:

The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant.

When evidence is seized in violation of the Fourth Amendment, it must be suppressed in state courts. *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). The Commonwealth argues that Pennsylvania has adopted a good faith exception to the rule that excludes evidence seized pursuant to an improperly issued search warrant.[7] In *Commonwealth v. Melilli*, 361 Pa.Super. 429, 522 A.2d 1107 (1987) the court below suppressed evidence obtained by the Commonwealth from pen registers and telephone interceptions because a magistrate had not determined that there was probable cause for the use of a pen register. When the Municipal Court judge issued the order authorizing the use of the pen register, he believed that a warrant

**6.** *Aguilar v. Texas, supra,* and *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969) set forth a two pronged test which must be met to show probable cause, i.e., establishment of (1) the basis of the informant's knowledge and (2) the reliability or veracity of the informant. In *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) the two pronged test was replaced with a totality of the circumstances analysis in determining the existence of probable cause. See also, *United States v. Feliz–Cordero,* 859 F.2d 250 (2nd Cir.1988). Pennsylvania adopted the totality of the circumstances test of *Illinois v. Gates, supra,* in *Commonwealth v. Gray,* 509 Pa. 476, 503 A.2d 921 (1985).

**7.** The majority opinion bases its opinion on the theory that the affidavit was not deficient, but nevertheless reaches the conclusion that it also falls within the good faith exception to the exclusionary rule. It seems to me that the majority position is inconsistent. If the affidavit formed a valid basis for issuing the search warrant, there would be no need to find a good faith exception. The Commonwealth argument is consistent and it does not contend that the affidavit was sufficient.

based upon probable cause was not a necessary condition for the use of a pen register and accordingly, he did not consider whether probable cause existed. We relied on the decision of the United States Supreme Court in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) which established a good faith exception to the exclusionary rule, and reversed the court below. We determined that the evidence was not subject to suppression as the law enforcement officials had acted in reasonable, good faith reliance upon authorization of a neutral magistrate, although the authorization was defective because unsupported by probable cause.[8]  Our decision was reversed by the Supreme Court in *Commonwealth v. Melilli*, 521 Pa. 405, 555 A.2d 1254 (1989) and the evidence was suppressed. The Supreme Court rejected the good faith exception as applied by the Superior Court in *Melilli*, stating at 521 Pa. 415, 555 A.2d at 1259: "Unfortunately, the present Superior Court simply misreads Justice Byron White's language in those cases [*United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), and *Massachusetts v. Sheppard*, 468 U.S. 981, 104 S.Ct. 3424, 82 L.Ed.2d 737 (1984).] and the doctrine as applied here must be rejected on review." The Supreme Court expressly stated that it would leave for another day and different facts to determine if a good faith exception would be read into the law of Pennsylvania.

Notwithstanding the Supreme Court's decision in *Commonwealth v. Melilli, supra,* the Commonwealth contends that two other cases on which it relies remain intact and support its position. In *Commonwealth v. Morris*, 368 Pa.Super. 237, 533 A.2d 1042 (1987) a state police officer verbally related facts to a magistrate which clearly supported a determination of probable cause. An affidavit was typed with the assistance of the magistrate's secretary but

**8.** The Supreme Court in *Melilli* noted at 521 Pa. 414–415, 555 A.2d at 1259:

> That decision [of the Superior Court in *Melilli* ] represents the only instance in our state jurisprudence so far to have attempted to read our State Constitution according to the *Leon* or *Sheppard* rationale.

the relevant facts were not included in the affidavit of probable cause. When the application for the search warrant was presented to the magistrate, she merely glanced at it before signing it. We held that under *Leon* and this court's decision in *Melilli,* that the police acted in good faith in relying on the magistrate's certification of probable cause. Our case is readily distinguishable as in *Morris* there was probable cause to issue the search warrant presented to the magistrate before the warrant was issued. In the instant case, there was nothing presented to the issuing authority on which it could base its determination that probable cause was present.

The Commonwealth's reliance on *Commonwealth v. Edmunds,* 373 Pa.Super. 384, 541 A.2d 368 (1988), appeal granted by *Commonwealth v. Edmunds,* 520 Pa. 595, 552 A.2d 250 (1988), is similarly misplaced. In that case, the affidavit did not contain facts from which the date of the informant's observation of marijuana could be ascertained. However, *information concerning the date of the observation had been communicated to the issuing authority, but had been omitted inadvertently from the affidavit when it was prepared in the magistrate's office.* We held that the evidence would not be suppressed as the police acted reasonably in relying on the warrant issued by the magistrate, stating at 373 Pa.Super. 384, 541 A.2d at 373 (1988):

> The suppression court's determination comported with the decision in *Commonwealth v. Morris,* 368 Pa.Super. 237, 533 A.2d 1042 (1987), *where a panel of this Court held that a good faith exception would be applied to a situation in which facts sufficient to establish probable cause were known to the officer and issuing authority but were inadvertently omitted from the affidavit.* (Emphasis added.)

The Commonwealth would have us grant a good faith exception to the exclusionary rule where the issuing authority did not have before it sufficient facts to constitute probable cause, on the basis that the police acted in good

faith in executing the search warrant. We should not do this, especially in view of our Supreme Court's admonition that it will determine in the future whether Pennsylvania should recognize a good faith exception at all.

In *Commonwealth v. Chandler, supra,* our Supreme Court stated:

> The people of this state and nation are constitutionally entitled to an independent judicial determination of probable cause before they must open to the policeman's knock at the door in the night.

> . . . . .

> The issuing judicial authority, in this case a District Justice, has the authority and obligation to draw such reasonable inferences as he will from the material supplied to him by police applying for a warrant and to make a finding on the issue of probable cause. Moreover, the magistrate is free to exact such assurances as he deems necessary to insure that the information on which probable cause is based has been obtained in a reliable way from a credible person. *Illinois vs. Gates,* 462 U.S. 213 at 240, 103 S.Ct. 2317 at 2333, 76 L.Ed.2d 527 at 549 (1983).

> The magistrate's function is more than the ministerial one of administering an oath to an officer who has set forth facts the officer believes constitute probable cause. *The magistrate must make a judicial determination, albeit a non-technical, common sense judgment, see Gates, as to whether probable cause exists.* (Emphasis added.)

505 Pa. at 121–123, 477 A.2d at 854–856.

A magistrate need not apply a highly technical reading to an application for a search warrant but where, as in this case, the application irrefragably fails to set forth probable cause, and the magistrate is not given any facts prior to the issuance of the warrant to establish probable cause, the search warrant may not serve as the basis for a valid search and seizure. This comports with the requirements

of *United States v. Leon,* 468 U.S. at 923, 104 S.Ct. at 3405, 82 L.Ed.2d at 699 wherein the Court stated:

Finally, depending on the circumstances of the particular case, a warrant may be so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid.

In my opinion warrant in this case was fatally defective for failing to set forth the date or dates on which the informant observed the presence of drugs and drug paraphernalia at the premises to be searched. The error could not be corrected by testimony after the seizure of evidence was completed to the effect that the objects to be seized were observed on the date the affidavit was taken, when this fact was not communicated to the magistrate prior to the issuance of the search warrant.

Accordingly, I dissent.