HOFFMAN, Judge:
 

 This is an appeal from the January 10, 1994 judgment of sentence for possession of cocaine with intent to deliver
 
 [1]
 
 and criminal conspiracy.
 
 [2]
 
 Appellant, Jose Martinez, presents the following issues for our review:
 

 I. Whether the trial court erred in refusing appellant’s timely motion to suppress physical evidence?
 

 II. Whether the trial court erred in refusing appellant’s motion to suppress statements made by appellant at the time of his arrest?
 

 Appellant’s Brief at iv. For the following reasons, we affirm.
 

 On April 15, 1993, Trooper Anthony Bozich of the Pennsylvania State Police applied for a search warrant for the second
 
 *96
 
 floor of a two family home at 304 E. 7th Street in Erie, Pennsylvania. A brief summary of his affidavit is as follows:
 

 1. Your affiant, Trooper Anthony Bozich, has been a police officer for the last twelve and one half years. I am currently assigned to the Pennsylvania State Police Bureau of Drug Law Enforcement Region VII, and have held this position for over ten years.
 

 2. On March 5, 1993, I received information from a confidential informant, who I have previously known to be reliable, that an individual who the informant knows to be a cocaine trafficker in Erie, PA, told the informant that he intended to use a residence at 304 E. 7th Street as a “stash house.”
 

 3. A “stash house” is a residence whose purpose is to secrete and store drugs or money. Stash houses are sometimes vacant or occupied only part time. Efforts are made not to call attention to the residence usually by keeping traffic in and out of the residence to a minimum.
 

 4. On March 31, 1993, I was told by the same confidential informant that cocaine trafficking was occurring at a residence at 1944 Buffalo Road, Erie, PA. The informant also stated that two or more Dominican males were supplying this house with cocaine.
 

 5. Surveillance was conducted by members of the PA State Police, FBI and City of Erie Police Department on 1944 Buffalo Road. On numerous occasions, officers followed three Dominican males, appellant and his co-defendants, identified by the confidential informant as the cocaine suppliers, from the residence at 1944 Buffalo Road to the residence at 304 E. 7th Street, the before mentioned “stash house.” Appellant and his co-defendants would enter the 304 E. 7th Street residence using a key. They would spend only brief periods of time in the residence, lasting anywhere from three to thirty minutes.
 

 6. After they left the residence, officers trailed appellant and his co-defendants to the following locations: (1) the residence back at 1944 Buffalo Road, where the subjects were soon observed meeting with known cocaine traffickers;
 
 *97
 
 (2) areas of known open air drug trafficking, where officers observed the subjects meeting with known cocaine traffickers; and (3) an area bar, where officers observed one of the subjects meet with a known cocaine trafficker.
 

 7. Two other instances indicate that the use of this residence was consistent with a “stash house.” On April 15, 1993, another officer contacted the landlord of 304 E. 7th Street, who told the officer that even though a family had supposedly moved into the property on March 31, 1993, she had visited the property recently and it appeared to her that it was unoccupied. Furthermore, on April 6 and April 13, the only two days in which the City of Erie could pick up garbage from the 304 E. 7th Street residence since the family had allegedly moved in, I observed no garbage placed outside for pick up.
 

 8. In the past forty eight hours, I was contacted by the same confidential informant, who stated that he had personally observed one of the Dominican males in question in possession of a significant quantity of crack cocaine.
 

 Affidavit at 1-7.
 

 Based on the following information, the magistrate issued a search warrant for the residence at 304 East 7th Street on April 15, 1993. Later that day, police executed the search warrant on that residence. As appellant and his co-defendants exited the residence, police escorted them back into the property, handcuffed them for security reasons, read them the search warrant and administered
 
 Miranda
 
 warnings. A search of the house revealed approximately six thousand dollars in cash, cocaine residue in a garbage can, fake identification cards, a manual for a sophisticated scale, and a receipt for a pager. Appellant acknowledged that the money and the bag, where several of these objects were found, were his. Shortly thereafter, the officers observed that one of appellant’s co-defendants was squirming and sweating profusely. Fearing for their safety, the officers performed a
 
 Terry
 
 frisk and discovered 619.02 grams of cocaine on his person.
 

 
 *98
 
 Appellant and his co-defendants were charged with possession of cocaine with the intent to deliver and criminal conspiracy. On August 30, 1993, appellant filed a timely omnibus motion to suppress both the physical evidence seized pursuant to the search warrant, and his statement to the police. After a hearing, the trial court denied appellant’s motion and a jury trial was held on November 9, 1993. Following this trial, on November 15, 1993, appellant was convicted of possession of cocaine with the intent to deliver and criminal conspiracy. The trial court denied appellant’s post-verdict motions and subsequently sentenced appellant to two consecutive terms of four (4) to ten (10) years imprisonment and fined him twenty five thousand (25,000) dollars. This timely appeal followed.
 

 Appellant first contends that the facts set forth in the affidavit for the search warrant failed to show that there was probable cause to believe that there was cocaine at the 304 E. 7th Street residence. We disagree.
 

 The courts in Pennsylvania have employed a “totality of the circumstances” test, enunciated in
 
 Illinois v. Gates,
 
 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), in determining whether probable cause exists for the issuance of a search warrant. Our Court has stated that:
 

 The magistrate’s determination that probable cause existed must be given deference____ While the inquiry is restricted to the four corners of the affidavit, the affidavit is to be interpreted in a common-sense and realistic fashion.... “The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the Veracity’ and ‘basis of knowledge’ of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.”
 

 Commonwealth v. Singleton,
 
 412 Pa.Super. 550, 552, 603 A.2d 1072, 1073 (1992) (quoting
 
 Commonwealth v. Carlisle,
 
 348 Pa.Super. 96, 501 A.2d 664 (1985),
 
 affirmed,
 
 517 Pa. 36, 534 A.2d 469 (1987) (citations omitted)). When reviewing the
 
 *99
 
 denial of a motion to suppress, it is the duty of this Court to determine whether the magistrate had a “substantial basis for concluding that probable cause existed.”
 
 Commonwealth v. Fromal,
 
 392 Pa.Super. 100, 113-14, 572 A.2d 711, 718 (1990).
 

 After a careful review of Officer Bozich’s affidavit of probable cause, we find that there was, in fact, probable cause to support the search of 304 E. 7th Street. First, the officers observed appellant and his co-defendants enter that residence with a key on numerous occasions. This observation supported the inference that they exerted dominion over the property.
 
 See Commonwealth v. Davis,
 
 407 Pa.Super. 415, 425, 595 A.2d 1216, 1221 (1991),
 
 appeal denied,
 
 530 Pa. 630, 606 A.2d 900 (1992). Second, the officers received information from a reliable informant that the residence at 304 E. 7th Street was going to be used as a “stash house” for cocaine. Police then corroborated this information by: (1) observing that no one appeared to live at the residence; (2) noting that appellant and his co-defendants spent extremely limited periods of time in the residence; and (3) observing on several occasions that appellant and his co-defendants met with known drug dealers immediately upon leaving the residence. Finally, a confidential informant had told Officer Bozich, within forty-eight hours of his application for the search warrant, that he/she had seen one of the three Dominican males in question with a large amount of crack cocaine. Trooper Bozich’s use of the present tense in the affidavit, along -with the fact that the activities of appellant and his co-defendants were occurring up to the day before the issuance of the search warrant, indicated that criminal activity was
 
 ongoing
 
 and thus, that this information was not stale.
 
 See Commonwealth v. Murphy,
 
 427 Pa.Super. 578, 584, 629 A.2d 1020, 1023 (1993),
 
 appeal denied,
 
 537 Pa. 648, 644 A.2d 734 (1994) (affiant’s use of present tense indicated that drug activity of defendant was in progress);
 
 Commonwealth v. Klinedinst,
 
 403 Pa.Super. 605, 610, 589 A.2d 1119, 1122 (1991),
 
 appeal denied,
 
 529 Pa. 618, 600 A.2d 534 (1991) (“a showing that the criminal activity is likely to have continued up to the time of the issuance of the warrant will render otherwise stale information viable”). Thus, based
 
 *100
 
 on the facts stated above, we find that the magistrate did not err in granting a search warrant for the residence at 304 E. 7th Street.
 
 Cf. Davis,
 
 407 Pa.Super. at 425-26, 595 A.2d at 1222 (issuance of search warrant for house upheld solely on fact that defendant was observed selling drugs within 48 hours of issuance of warrant and also was observed entering home after sale);
 
 Commonwealth v. Yucknevage,
 
 257 Pa.Super. 19, 390 A.2d 225 (1978) (observation of defendant exiting house to go to drug meeting, along with his statement that he was short on the drugs, was sufficient to support affidavit of probable cause).
 

 Appellant next claims that his statement to police when they were executing the search warrant should have been suppressed because he gave the statement after the police had unlawfully arrested him. We disagree.
 

 Our Court has previously asserted that when in possession of and when executing a valid search warrant, the police have the authority to detain persons who are on the premises, or who have recently exited and are outside of the premises.
 
 Commonwealth v. Carr,
 
 334 Pa.Super. 459, 466-67, 483 A.2d 542, 546 (1984);
 
 Commonwealth v. Reicherter,
 
 317 Pa.Super. 256, 463 A.2d 1183 (1983). As appellant was exiting the premises when the officers were executing the warrant, they were entitled to detain appellant.
 

 The officers, however, handcuffed appellant while detaining him. Appellant argues that he had therefore been improperly arrested. The Pennsylvania Supreme Court has defined the test for determining whether an arrest has occurred:
 

 [A]ny act that indicates an intention to take the person into custody and subjects him to the actual custody and will of the person making the arrest____ The test is an objective one, i.e., viewed in the light of the reasonable impression conveyed to the person subjected to the seizure rather than the strictly subjective view of the officers or the persons being seized.
 

 
 *101
 

 Commonwealth v. Rodriguez,
 
 532 Pa. 62, 74, 614 A.2d 1378, 1384 (1992) (quoting
 
 Commonwealth v. Duncan,
 
 514 Pa. 395, 400, 525 A.2d 1177, 1179 (1987) (citations omitted)). While the officers handcuffed appellant in order to protect themselves, they never told appellant that he was only being handcuffed in order to ensure their safety while they searched the residence. Therefore, the reasonable impression conveyed was that appellant was under the control and within the custody of the officers. Consequently, he was under arrest.
 
 Commonwealth v. Frank,
 
 407 Pa.Super. 500, 505, 595 A.2d 1258, 1261 (1991);
 
 cf. Rodriguez,
 
 532 Pa. at 74, 614 A.2d at 1384 (reasonable impression of defendant when police officer escorted him to enclosed location at gunpoint was that he was under arrest). Moreover, as the police did not have probable cause to arrest appellant at that time, the arrest was illegal.
 

 Appellant further asserts that as the arrest was illegal, all statements made following the arrest should have been suppressed. However, the Pennsylvania Supreme Court has stated:
 

 [A]ll [statements] made by an illegally arrested person are not per se inadmissible as trial evidence.... [S]everal factors to be considered in scrutinizing an individual case: (1) whether
 
 Miranda
 
 warnings were given; (2) the “temporal proximity of the arrest and the confession;” (3) the presence of intervening circumstances; and (4) the purpose and flagrancy of the official misconduct.
 

 Commonwealth v. Bogan,
 
 482 Pa. 151, 157, 393 A.2d 424, 427 (1978). In the instant case, Officer Bozich had given appellant
 
 Miranda
 
 warnings before appellant made his statement to the police, and appellant acknowledged his understanding of these warnings. N.T. 11/10/93 at 188. In addition, appellant’s unlawful arrest was neither purposeful nor flagrant. To the contrary, officers unwittingly arrested appellant in an effort to detain him and in genuine concern for their safety.
 
 See Frank,
 
 407 Pa.Super. at 505, 595 A.2d at 1261 (when defendant was handcuffed, arrest occurred because defendant reasonably believed that he was not free to leave and because he was physically restrained by use of handcuffs). Finally, appel
 
 *102
 
 lant has set forth no claim that his statement was involuntary or that it was coerced due to the arrest.
 
 Commonwealth v. McFeely,
 
 509 Pa. 394, 401, 502 A.2d 167, 171 (1985). Thus, based on the facts stated above, we find that the trial court did not err in refusing to suppress appellant’s statement to police. Accordingly, we affirm judgment of sentence.
 

 Affirmed.
 

 [1]
 

 . 35 Pa.S. § 780-113(a)(30).
 

 [2]
 

 . 18 Pa.C.S. § 903.