J-S01034-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| JAELLE M. NDAMAGE | : | |
| | : | |
| Appellant | : | No. 1052 MDA 2017 |

Appeal from the Judgment of Sentence April 12, 2017
In the Court of Common Pleas of Lancaster County
Criminal Division at No(s):  CP-36-CR-0003041-2016

BEFORE:  GANTMAN, P.J., MURRAY, J., and MUSMANNO, J.

MEMORANDUM BY GANTMAN, P.J.:              **FILED FEBRUARY 09, 2018**

Appellant, Jaelle M. Ndamage, appeals from the judgment of sentence entered in the Lancaster County Court of Common Pleas, following her jury trial conviction for possession with the intent to deliver a controlled substance, criminal conspiracy, and possession of drug paraphernalia.  We affirm.

In its opinion, the trial court fully and correctly sets forth the relevant facts and procedural history of this case.  Therefore, we have no reason to restate them.

Appellant raises the following issue for our review:

> DID THE TRIAL COURT ERR IN DENYING [APPELLANT]'S MOTION TO SUPPRESS WHERE POLICE OFFICERS DID NOT HAVE AN ADEQUATE BASIS TO DETAIN, NOR A WARRANT AND/OR PROBABLE CAUSE TO ARREST, [APPELLANT] IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION

AND ARTICLE I, SECTION 8 OF THE PENNSYLVANIA
CONSTITUTION?

(Appellant's Brief at 4).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable David L. Ashworth, we conclude Appellant's issue merits no relief. The trial court opinion comprehensively discusses and properly disposes of the question presented. (*See* Trial Court Opinion, filed August 24, 2017, at 1-9) (finding: at suppression hearing, Detective Michael Vance testified that he executed search warrant for Appellant's boyfriend's car and apartment he shared with Appellant; officers apprehended boyfriend after they found him at his car and he attempted to flee; police then executed search of couple's apartment; police announced themselves and knocked at back door of apartment; officers heard someone inside, but no one answered door; police breached door and identified themselves as officers with search warrant; police observed Appellant attempting to leave apartment; when police stopped Appellant and brought her back into apartment, her book bag fell to her feet from her shoulder; inside book bag police discovered 520 grams of heroin and digital scale; officers also found in apartment another digital scale, dust masks, sandwich baggies with corner cut off, yellow rubber gloves, and $4,073.00 cash; police seated both Boyfriend and Appellant in living room and read them their *Miranda* rights; when asked if there was anything else in apartment, Appellant responded "everything they had inside

the house was in the bag"; police then arrested Appellant; officers permissibly detained Appellant when she attempted to leave apartment as officers executed search warrant; officers' temporary detainment of Appellant as she tried to leave was not arrest; after detaining Appellant, police searched backpack Appellant dropped inside residence; search of backpack was proper, because search warrant gave officers authority to search entire residence for contraband, and Appellant did not physically possess bag when officers seized it; Detective Vance credibly testified that, after officers read Appellant her *Miranda* rights, Appellant acknowledged drugs and drug paraphernalia found inside back pack belonged to her; drugs and drug paraphernalia officers found in bag provided officers probable cause to arrest Appellant; court properly denied Appellant's suppression motion). Accordingly, we affirm on the basis of that opinion.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 02/09/2018

- 3 -

**IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PENNSYLVANIA**
**C R I M I N A L**

COMMONWEALTH OF PENNSYLVANIA :

v. : No. 3041 - 2016

JAELLE MAJA NDAMAGE :

**OPINION SUR PA. R.A.P. 1925(a)**

BY: ASHWORTH, J., AUGUST 24, 2017

Jaelle Maja Ndamage has filed a direct appeal to the Superior Court of
Pennsylvania from the judgment of sentence imposed on April 12, 2017, as finalized by
the denial of her post sentence motion on June 6, 2017. This opinion is written
pursuant to Rule 1925(a) of the Pennsylvania Rules of Appellate Procedure.

## I. Background

The relevant facts and procedural background are as follows. On June 7, 2016,
members of the Lancaster County Drug Task Force conducted a search pursuant to a
warrant at the residence of Appellant and her boyfriend, David Lausell, Jr. Appellant
was subsequently arrested and charged with possession with intent to deliver a
controlled substance (heroin), criminal conspiracy, and possession of drug
paraphernalia.[1]

---

[1] 35 P.S. § 780-113(A)(30), 18 Pa.C.S.A. § 903(A)(1), and 35 P.S. § 780-113(A)(32),
respectively.

3\

On July 5, 2016, the Commonwealth gave notice of its intent to consolidate Appellant's case with Lausell's charges at Information Nos. 3033-2016 and 3034-2016. A counseled motion to sever Appellant's case from her co-defendant's was filed on January 13, 2017. In this motion, Appellant asserted that her chosen defense was that (1) Lausell had a felony drug conviction from 2010, and (2) the heroin was found in the apartment in Lausell's backpack and was possessed by Lausell to the exclusion of Appellant. The Commonwealth ultimately agreed that all three dockets should be severed and separately tried. (*See* Notes of Testimony (N.T.), Suppression at 3.)

A counseled omnibus pre-trial motion was filed on October 11, 2016, seeking to suppress certain physical evidence and statements as the fruit of an allegedly unconstitutional and illegal search of Appellant's person and property.[2] A suppression hearing was held on January 17, 2017, at the conclusion of which I denied the motion in its entirety on the record. (N.T., Suppression at 59.) The case proceeded to a jury trial on January 18, 2017, and concluded with a verdict of guilty on all charges on January 19, 2017. (N.T., Trial at 371.)

Following the verdict, sentencing was deferred pending a pre-sentence investigation. On April 12, 2017, Appellant was sentenced to an aggregate term of

---

[2]In the suppression motion, Appellant claimed that the search and arrest were illegal, and violated Appellant's rights as guaranteed by the United States Constitution, as well as the Pennsylvania Constitution, on the following grounds: (1) there was no valid warrant; (2) the police lacked reasonable suspicion or probable cause to search or to conduct an unlawful arrest; (3) the arrest was the result of and the fruit of the illegal search of the residence; and (4) there was no consent to search given by the owner of the house. Additionally, Appellant sought to suppress certain statements made by Appellant to the police while in custody without having received the benefit of **Miranda** warnings.

2

4-1/2 years' to 15 years' incarceration in a state correctional institution.[3] (N.T., Sentencing at 17.) Appellant was ineligible for a recidivism risk reduction incentive (RRRI) sentence due to the quantity of drugs found. (Id. at 2, 19.) Appellant filed a post sentence motion to modify sentence, requesting a minimum sentence of 36 months to make her eligible for boot camp. That post sentence motion was denied by Order of June 6, 2017. A timely appeal to the Superior Court of Pennsylvania was filed on June 29, 2017.

Pursuant to this Court's directive, Appellant furnished a statement of errors complained of on appeal which raises just one issue: whether the Court erred in denying Appellant's motion to suppress certain physical evidence and statements made by Appellant following her arrest.

## II. Discussion

Appellant contends that the Court erred in denying her suppression motion "where the police did not have a warrant or probable cause to arrest [Appellant] . . . and therefore, any observations of the police after that, any physical evidence including the 520 grams of heroin and scale, and any statements made by [Appellant] should have been suppressed as the fruit of the illegal arrest." (See Statement of Errors at ¶ 1.) In reviewing the denial of a suppression motion, the appellate court must determine

> whether the suppression court's factual findings are supported by
> the record and whether the legal conclusions drawn from those

---

[3]Appellant received concurrent sentences of 4-1/2 years' to 15 years' incarceration for the offenses of possession with intent to deliver heroin and criminal conspiracy, and a sentence of costs for the possession of drug paraphernalia conviction. (N.T., Sentencing at 17.)

3

facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where . . . the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

**Commonwealth v. Jones**, 605 Pa. 188, 198, 988 A.2d 649, 654 (2010) (internal citations and quotations omitted). In appeals from suppression orders, the scope of review is limited to the evidence produced at the suppression hearing. **In re L.J.**, 622 Pa. 126, 152, 79 A.3d 1073, 1088-89 (2013). The Commonwealth bears the sole burden of proof to establish by a preponderance of the evidence that the challenged evidence is admissible and that it was not obtained in violation of the defendant's constitutional rights. Pa.R.Crim.P. 581(H). *See also* **Commonwealth v. Enimpah**, 630 Pa. 357, 368, 106 A.3d 695, 701 (2014).

The evidence at the suppression hearing established the following facts. On June 7, 2016, Detective Michael Vance of the East Earl Township Police Department, and a member of the Lancaster County Drug Task Force,[4] executed a valid search warrant for a 2013 GMC Terrain being driven at the time by David Lausell on West Marion Street in the vicinity of the apartment he shared with Appellant at 763 Marietta

---

[4]Detective Vance, a police officer for ten years, had specialized training and experience in narcotics investigations. (N.T., Suppression at 6-7.)

Avenue in Lancaster City. (N.T., Suppression at 8-9, 14-15; Commonwealth Exhibit No. 2.) After attempting to flee the police, Lausell was removed from the vehicle, searched, handcuffed and taken into custody. (Id. at 14-15, 25, 27, 65.)

Immediately after taking Lausell into custody, Detective Vance and another team of officers executed a valid search warrant at Lausell's Marietta Avenue apartment.[5] (N.T., Suppression at 7; Commonwealth Exhibit No. 1.) Police followed the "knock and announce" protocol at the second floor back door to the apartment.[6] (Id. at 15, 32.) Although the officers heard someone inside the residence, no one responded to the door. (Id. at 15.) Consequently, after waiting for an appropriate period of time, the door was breached and the officers, wearing vests emblazoned with the word "police", entered the apartment through the back entrance, while yelling "police with a search warrant." (Id. at 16-17.)

After clearing the kitchen and living room, the police observed Appellant trying to exit the apartment by way of the interior stairs to the apartment building's first floor common vestibule. (N.T., Suppression at 17-18, 34.) As Appellant was brought back through the door into the apartment, a book bag fell off of her shoulder and landed at her feet. (Id. at 18.) A look inside the bag revealed approximately 520 grams of heroin or one-half kilogram, with an approximate street value of $174,666.00, and a large

---

[5]Appellant and her co-defendant, Lausell, each included a challenge to the validity of the search warrant in their omnibus pretrial motions, specifically alleging that there were material misstatements of fact within the search warrant. Those challenges were dropped at the time of the suppression hearing. (N.T., Suppression at 4-5.)

[6]Police surveillance revealed that Lausell accessed his second floor rear apartment through the back door facing West Marion Street, and not the front door to the building facing Marietta Avenue. (N.T., Suppression at 12-13.)

5

scale.[7]  (Id. at 18, 70.)

Lausell and Appellant were both taken to the living room and seated there with their young child.  (N.T., Suppression at 19, 35-36.)  Lausell was handcuffed but Appellant was not.  (Id.)  Detective Vance read the service portions of the search warrants (one for the apartment and one for the vehicle) to them at that time, followed by their **Miranda** rights.  (Id. at 19-20, 28-29.)  At the conclusion, both defendants indicated that they understood their rights.  (Id. at 21.)

Detective Vance proceeded to ask the couple "if there was anything else in the apartment that [the police] needed to be made aware of, any large amounts of drugs, any large amounts of money, any weapons or any things of that nature that they would like to disclose at [that] time."  (N.T., Suppression at 30.)  Appellant waived her **Miranda** rights and responded that "everything they had inside the house was in the bag."  (Id. at 22.)  Lausell then repeatedly stated that "everything that [was] found in the house belonged to him."  (Id. at 22, 31.)  Appellant was arrested, and subsequently charged with the crimes of possession with intent to deliver a controlled substance (heroin), criminal conspiracy, and possession of drug paraphernalia.

Appellant argued at her suppression hearing and argues now on appeal that there was insufficient probable cause for the police to arrest Appellant without a warrant.  (See Statement of Errors at ¶ 1; N.T., Suppression at 5.)  Detective Michael Vance testified that Appellant was detained by the police after attempting to flee the

_____

[7]Also seized from the apartment was another digital scale, white dust masks, a sandwich baggie with the corner cut off, a black mask, yellow rubber gloves, and $4,073.00 U.S. Currency. (Criminal Complaint, Affidavit of Probable Cause at ¶ 3.)

apartment, although she was not placed under arrest. (Id. at 18.) It is well established that police officers executing a warrant to search a place are permitted to detain any persons who are on the premises, or who have recently exited and are outside of the premises, in order "to minimize the possibility of harm to officers and prevent concealment or destruction of evidence." **Commonwealth v. Stackfield**, 438 Pa. Super. 88, 94, 651 A.2d 558, 560 (1994); **Commonwealth v. Martinez**, 437 Pa. Super. 93, 100, 649 A.2d 143, 147 (1994). As Appellant was exiting the premises when the officers were executing a properly issued search warrant, they were entitled to detain her while they completed their execution of the search warrant. This temporary detention of Appellant was not an arrest.[8]

After lawfully detaining Appellant, the police did not search her. Rather, they searched the backpack she dropped on the floor of the residence. The United States

---

[8]Contrary to Detective Vance's testimony, Appellant testified at the suppression hearing that she was placed in handcuffs immediately upon being stopped at the bottom of the interior steps as she was attempting to exit the apartment, and that the handcuffs remained for the duration of the interview. (N.T., Suppression at 39.) Appellant argued that she had therefore been improperly arrested. (Id. at 56.) The act of handcuffing may convey the reasonable impression to a suspect that he or she is under the control and within the custody of the officers and, consequently, under arrest. See **Commonwealth v. Gillespie**, 745 A.2d 654, 660 (Pa. Super. 2000) (citing **Commonwealth v. Martinez**, 437 Pa. Super. 93, 100-01, 649 A.2d 143, 147 (1994) (indicating defendant under arrest where police handcuffed him and searched his residence; although police indicated they handcuffed him for their own safety, they did not tell the defendant this, and in the absence of this information, defendant could reasonably believe he was under custodial detention); **Commonwealth v. Frank**, 407 Pa. Super. 500, 595 A.2d 1258, 1261 (1991) (concluding arrest occurred when defendant was apprehended and handcuffed by police because defendant reasonably believed that he was not free to leave and because he was physically restrained by use of handcuffs)). Regardless, I did not find Appellant's testimony regarding the handcuffs credible, particularly in light of her prior conviction for the crimen falsi offense of fraud. (Id.) See **Commonwealth v. Galendez**, 27 A.3d 1042, 1046 (2011) (quoting **Commonwealth v. Elmobdy**, 823 A.2d 180 (Pa. Super. 2003)) (in ruling on defendant's suppression motion, the trial court bears the sole responsibility of determining the credibility of the witnesses and the weight to be given to their testimony at the suppression hearing).

7

Supreme Court has held that a valid search warrant authorizes the search of any container found on the premises that might contain the object of the search, which in this case was drugs. **Commonwealth v. Petty**, 157 A.3d 953, 957 (Pa. Super. 2017) (*citing* **United States v. Ross**, 456 U.S. 798, 820 (1982)). As echoed by our appellate courts:

> [W]here a search warrant adequately describes the place to be searched and the items to be seized[,] the scope of the search extends to the entire area in which the object of the search may be found and properly includes the opening and inspection of containers and other receptacles where the object may be secreted.

Id. at 957 (*quoting* **Commonwealth v. Waltson**, 555 Pa. 223, 724 A.2d 289, 292 (1988) (internal quotations omitted)).

In the instant case, the search of the backpack was proper because the search warrant granted the authority to search the entire residence – a suspected drug house – for contraband. *See* **Petty**, *supra* (police possessing warrant to search defendant's residence for evidence of drugs were authorized to search pockets of pants lying on floor within reach of defendant as he lay in bed; because defendant was not in possession of the pants at time of search, the pants were an article of personal property on the premises subject to search, rather than an extension of defendant's person). *See also* **Commonwealth v. Abdul-Salaam**, 544 Pa. 514, 678 A.2d 342, 352 (1996) (search of briefcase found in closet proper because "scope of a search 'extends to the entire area in which the object of the search may be found' and properly includes the opening and inspection of containers and other receptacles where the object may be secreted."); **Commonwealth v. Bleigh**, 402 Pa. Super. 169, 586 A.2d 450 (1991)

8

(police had authority to search purse and briefcase found in premises to be searched). Because Appellant had dropped the bag in her apartment and did not physically possess it when the police officers seized it, the police were authorized to search it for contraband. Inside the bag was one-half kilogram of heroin and a scale. Since the mere possession of drugs is a criminal activity, probable cause existed to link the drugs and drug paraphernalia to criminal activity.

Detective Vance testified credibly that, after detaining Appellant and discovering the drugs in her back pack, he outlined all of Appellant's **Miranda** rights from a pre-printed pocket card. Appellant acknowledged each of her rights and indicated that she fully understood those rights. Thus, her subsequent statements to the police were voluntary following a proper **Miranda**. Specifically, Appellant acknowledged that the drugs and drug paraphernalia found inside the back pack belonged to her. (N.T., Suppression at 22.) This criminal activity established independent probable cause for Appellant's arrest. Accordingly, Appellant's constitutional rights were not violated in this case and her motion to suppress was properly denied.

## III. Conclusion

For the reasons set forth above, Appellant Jaelle Maja Ndamage's judgment of sentence should be affirmed.

Accordingly, I enter the following:

9

# IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PENNSYLVANIA
## CRIMINAL

COMMONWEALTH OF PENNSYLVANIA :

:

v. : No. 3041 - 2016

:

JAELLE MAJA NDAMAGE :

## ORDER

AND NOW, this 24th day of August, 2017, the Court hereby submits this Opinion

pursuant to Rule 1925(a) of the Pennsylvania Rules of Appellate Procedure.

BY THE COURT:

DAVID L. ASHWORTH
JUDGE

ATTEST:

Copies to: Susan E. Moyer, Assistant District Attorney
Diana C. Kelleher, Assistant Public Defender